<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES MORAN<br><br>            Plaintiff,<br><br>    v.<br><br>SOUTHERN REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION, et al.<br><br>            Defendants. | CIVIL NO. 05-1062 (SRC)<br><br>**OPINION** |

**<u>CHESLER, District Judge</u>**

      **THIS MATTER** comes before the Court on four Motions for Summary Judgment brought by defendants James Schwerin and Joan Josephson (docket entry #3), defendants Southern Regional High School District Board of Education and James Kerfoot (docket entry #13), and defendant Michael Barker (docket entry #37) (collectively the "Defendants"). The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** Defendants' Motion, granting Summary Judgment in favor of the Defendants on the federal claims in Count One of the Plaintiffs' Complaint and dismissing the remainder of the case on the grounds that, absent the federal claims in Count One, this Court lacks subject matter jurisdiction to adjudicate the remaining state claims in the Plaintiff's Complaint.

## I.  BACKGROUND

On or about February 24, 2005, Plaintiff filed a three-count Complaint asserting causes of action for alleged violations of the Fourth and Fourteenth Amendments, violations of 42 U.S.C. § 1983, and violations of New Jersey state tenure laws (Count One), tortious interference with Plaintiff's tenure status and employment (Count Two), and negligence claims against Defendants Barker and Josephson (Count Three).  (See Compl.)   Plaintiff James Moran ("Moran") was a tenured employee, who was employed for about 17 years by Defendant Southern Regional High School District Board of Education (the "District").  The last position Moran held with the District was Assistant Superintendent/Business Administrator.

Defendant Dr. James Kerfoot ("Kerfoot") was the Superintendent of Schools for the District.  In the fall of 2002, several female employees complained to Kerfoot regarding Moran's conduct.  The alleged conduct involved Moran's discussion of sexually explicit matters with his female employees, and often keeping certain female employees with him in his office, behind closed doors, for extended periods of time to engage in unwanted sexual discourses.  These female employees considered Moran's conduct to be sexual harassment.

Defendant Michael Barker ("Barker") was an attorney who served as the Affirmative Action Officer for the District.  At Kerfoot's request, Barker conducted a preliminary investigation into the complaints against Moran.  In September 2002, Barker submitted a preliminary report to Kerfoot regarding the Moran investigation.  Kerfoot placed Moran on leave of absence, officially characterized as medical leave, that same month.  These days were charged to Moran's accumulated sick days.

Moran was permitted to return to work in November 2002, under certain conditions.

These included his attendance at anger management training, agreeing to keep his office door open, limiting his discussions with staff members to official business and attending monthly school business administrators' meetings.  In May of 2003, Kerfoot was notified by several District employees that Moran's workplace conduct had not improved.  On May 27, 2003, Kerfoot placed Moran on administrative leave.  An attorney, Defendant Joan Josephson ("Josephson"), was retained by Kerfoot to investigate the allegations of inappropriate conduct against Moran.  After interviewing various employees at the District's business office, most of whom reported to Moran, Josephson prepared a twenty-two page statement of charges identifying the specific conduct alleged against Moran.  These charges included detailed allegations of Moran initiating inappropriate communications of a sexual nature with subordinates, inappropriate comments to and about employees, misusing District property and personnel, insubordination by refusing to comply with administrative directives, and other charges.   A copy of this statement of charges was shared with Moran and his attorney.

  Before the statement of charges was shared with the Board, Moran entered into a settlement agreement (the "Agreement") with the District.  Under the terms of the Agreement, Moran agreed to resign his position with the District effective November 30, 2003.  Moran also agreed to release the District and any of its agents, employees from all claims he may have arising from his employment with the District or in connection with the severance of that employment and agreed not to make any public comment on the terms of the Agreement or his employment with the District.

  For its part, the District agreed to pay Moran $200,000 in satisfaction of all claims he may have against the District for salary and all other compensation.  The District also agreed to

release Moran from any claims or causes of action arising in connection with his employment with the District as well as indemnify Moran against all claims arising from that employment. Additionally, the District agreed that the response to all inquiries related to Moran's employment with the District would be limited to a statement that he was employed from 1986 to 2003 and that he resigned voluntarily from his position. The Agreement also required the District to not disclose any information or make any comment on Moran's work performance unless expressly released in writing. In the event that the terms of the Agreement were breached, any claims, rights, and causes of action covered by the releases in the agreement would be revived.

Pursuant to the Agreement, Moran submitted an irrevocable letter of resignation to the District, effective November 30, 2003. On December 1, 2003, the District voted to accept Moran's resignation and ratified the agreement. On December 3, 2003, the *Asbury Park Press* published a story about Moran's resignation and the terms of the Agreement. (See Affidavit of James Schwerin, Ex. A). The article cited to "sources connected to the district" and mentioned that a copy of the Agreement was released to reporters after a request was made under the New Jersey Open Public Records Act. (Id.) On December 4, 2003, Moran, through his attorney, sent a letter to the District claiming that the *Asbury Park Press* article constituted a breach of the Agreement. (Id., Ex. C.) In this letter, Moran notified the District that he considered the terms of the Agreement void and he withdrew his resignation.[1] (Id., Ex. C.)

On December 22, 2003, the District filed a complaint against Moran seeking specific

---

[1] A subsequent editorial was published on December 5, 2003 which detailed the terms of the Agreement and criticized the District for entering into such a settlement. An additional article was published in the *Asbury Park Press* on December 11, 2003 further detailing the circumstances surrounding Moran's resignation.

performance of the Agreement in the Superior Court of New Jersey, Ocean County, Chancery Division. A Consent Judgment was entered into on February 9, 2004, where the parties acknowledged the validity of the Agreement, but provided that any claims as to alleged past breaches of the Agreement remained viable. Moran's counterclaims were transferred to the Law Division where they are currently being litigated. These counterclaims were brought against Kerfoot and members of the District, claiming breach of contract, violation of Moran's privacy rights, disparate treatment, violations of Moran's state and federal constitutional rights, wrongful termination, and various other state law contract and tort claims. On February 24, 2005 Moran brought the current case in federal court, reciting many of the same claims currently being litigated in the state case, with additional claims against Defendants Barker and Josephson (who were not parties in the state case).

### III. DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

The issues of whether the terms of the Agreement constitute a valid and enforceable waiver of any of Moran's claims against the Defendants, whether the Defendants breached the terms of the Agreement, or what are the possible consequences of any alleged breach of the Agreement, all remain to be litigated in the pending state case.  For the reasons below, however, the Court finds the Plaintiff's federal constitutional claims, which provide the source of this Court's jurisdiction over the current case, are without merit.  After proper dismissal of the federal claims, the Court lacks subject matter jurisdiction over the remaining state claims.  This Court, therefore, need not render a judgment on the Agreement's ongoing enforceability, or any alleged breach of the Agreement's terms, but rather leaves those issues to be resolved in the pending state litigation on this matter.

The Plaintiff's federal claims in this case are based on Title 42 U.S.C. § 1983.  Section

1983 provides civil remedies against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  Section 1983 does not, by itself, confer any substantive rights, but rather serves as a vehicle to enforce rights granted under the Constitution or federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  Accordingly, to state a claim under § 1983, a plaintiff must "prove a violation of the underlying constitutional right."  Daniels v. Williams, 474 U.S. 327, 330 (1986).

A.   The Plaintiff's Complaint Fails to State a Claim for Violation of his Constitutional Due Process Rights

In Count One of his Complaint, Moran alleges that the District's actions deprived him of his tenure rights "by violations of his substantive and procedural due process rights."  (Compl. at 6, ¶ 27.)  The apparent basis of the Plaintiff's substantive due process claim is that the District violated a property right in public employment which is "fundamental" and therefore entitled to substantive due process protection.  Under Third Circuit precedent, however, the Plaintiff does not possess a substantive due process right to his continued employment with the District.  See Nicholas v. Pennsylvania State University, 227 F.3d 133, 141 (3d Cir. 2000) (holding tenured public employment is not a "fundamental property interest entitled to substantive due process protection").  See also Emri v. Evesham Township Bd. of Educ., 327 F.Supp.2d 463, 471 (D.N.J. 2004) (finding interest in tenured public employment not entitled to substantive due process protection); Homar v. Gilbert, 63 F.Supp.2d 559, 573 (M.D.Pa. 1999) ("[P]ublic employment is not a 'fundamental' property interest that implicates substantive due process where an individual,

7

non-legislative employment decision is at issue."); Lei v. Brown, 1997 WL 634506, at *8 (E.D.Pa. Oct.8, 1997) (finding that termination of tenured public employee does not implicate substantive due process); Austin v. Neal, 933 F.Supp. 444, 453 (E.D.Pa.1996) (finding "[a] right to be discharged from public employment only for cause" not to implicate substantive due process).

While the Plaintiff is not entitled to claim substantive due process rights to his continued employment with the District, he may claim procedural due process protection for his continued employment as a tenured public employee. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Bradley, 913 F.2d at 1077. The Fourteenth Amendment requires procedural due process prior to the deprivation of a property interest, such as Moran's interest in his tenure status. See Nicholas, 227 F.3d at 142. Procedural due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner" that is "appropriate to the nature of the case." Armstrong v. Manzo, 380 U.S. 545, 552 (1965); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

New Jersey law provides for the procedure to be followed in order to protect the procedural due process rights of tenured public school employees facing dismissal. N.J.S.A. 18A:6-11 requires that charges to dismiss a tenured employee be filed with the secretary of the board in writing, the employee be provided with a copy of the charges and the evidence being brought, and the employee offered the opportunity to submit their position and evidence to the board in response to the charges.[2] If the school board finds the charges supported with probable

---

[2] The state statute provides, in pertinent part:
Any charge made against any employee of a board of education under tenure during

cause to merit the employee's dismissal or reduction in salary, they are required to forward its "written charge to the commissioner for a hearing pursuant to N.J.S.A. 18A-16." N.J.S.A. 18A:6-11.

The reason why such procedural protections were not honored in this case is that Moran voluntarily resigned his position, pursuant to the terms of the Agreement, *before* any formal charges were brought to the school board. There is no indication that, had Moran not agreed to resign his position as part of the Agreement with the District, but rather chose to avail himself of the procedural due process protections available to him, that the District would not have followed the appropriate procedures in filing charges against him, held the requisite hearings, and otherwise appropriately protected Moran's procedural due process rights. The Plaintiff's right to claim procedural due process protections for the termination of his employment ended when he voluntarily entered into an Agreement with the District to voluntarily resign his tenured position.

---

good behavior and efficiency shall be filed with the secretary of the board in writing, and a written statement of evidence under oath to support such charge shall be presented to the board. The board of education shall forthwith provide such employee with a copy of the charge, a copy of the statement of the evidence and an opportunity to submit a written statement of position and a written statement of evidence under oath with respect thereto. After consideration of the charge, statement of position and statements of evidence presented to it, the board shall determine by majority vote of its full membership whether there is probable cause to credit the evidence in support of the charge and whether such charge, if credited, is sufficient to warrant a dismissal or reduction of salary. The board of education shall forthwith notify the employee against whom the charge has been made of its determination, personally or by certified mail directed to his last known address. In the event the board finds that such probable cause exists and that the charge, if credited, is sufficient to warrant a dismissal or reduction of salary, then it shall forward such written charge to the commissioner for a hearing pursuant to N.J.S.A. 18A:6-16, together with a certificate of such determination. . . . The consideration and actions of the board as to any charge shall not take place at a public meeting.

N.J.S.A. 18A:6-11.

Should the Agreement be found void by the pending procedures in state court, the District may be required to offer Moran notice and an opportunity to be heard on the charges by following the procedural process outlined for terminating tenured public school employees under New Jersey state law.  There is no indication, however, that the District would not be prepared to adhere to these procedures in the event that the Agreement were to be deemed invalid.  Nor is it alleged that these procedures, if followed, would offer insufficient protection for Mr. Moran's due process rights.  Accordingly, this Court finds that the Plaintiff's Complaint fails to state a claim that his constitutional due process rights have been violated.

B.        The Plaintiff's Complaint Fails to State a Claim for Violation of his Constitutional Privacy Rights

Count One of the Plaintiff's Complaint further alleges that the Defendants "violated his right to privacy and expectation thereof" and that the alleged violation of the Agreement's confidentiality clause "constituted a clear and direct violation of the [P]laintiff's civil rights as protected under the U.S. Constitution and 42 U.S.C. § 1983." (Compl. at 6, ¶ 26.)  This disclosure, it is claimed, resulted in a "destruction of [the Plaintiff's] good name and reputation and the liberty interest he held therein."  (Id., ¶ 27.)

The right to privacy guaranteed by the Fourteenth Amendment protects some confidential information, including medical reports, United States v. Westinghouse Elec. Corp., 638 F.2d 570, 578 (3d Cir.1980), and personal papers. Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 475-558 (1977).  "The right to privacy extends to . . . 'the individual interest in avoiding disclosure of personal matters. . . .'"  Scheetz v. The Morning Call, Inc., 946 F.2d 202, 206 (3d

10

Cir.1991) (quoting <u>Whalen v. Roe</u>, 429 U.S. 589, 599 (1977)). The right to privacy, however, does not extend to reputation. <u>Id.</u> (noting that "[t]he Supreme Court rejected the proposition that reputation alone was a liberty or property interest within the meaning of the due process clause."); <u>See</u> <u>also</u> <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976) ("The words "liberty" and "property" as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law.").

      The source of the Plaintiff's claim is that by allegedly releasing information related to the Agreement and the circumstances surrounding his resignation to the press, the Defendants violated his constitutional rights to privacy. Even taking the Plaintiff's allegations as true, this Court does not find that the release of the terms of the Agreement and information regarding Moran's resignation from his post with the District violated his constitutional rights to privacy. All that is being alleged is that the District released information regarding an official act of the District in relation to Moran's employment, namely the District's ratification of the Agreement and its terms and the acceptance of Moran's resignation, to the local media. These claims, if true, may be a contractual breach of the Agreement's terms, but they do not constitute a violation of Moran's constitutional privacy rights. <u>See</u> <u>Paul</u>, 424 U.S. at 713 (finding publication of records of official acts not to infringe on constitutional privacy rights). <u>See</u> <u>also</u> <u>Peters v. Houston</u>, 1999 WL 554581, *12 (E.D.Pa. 1999) (release of statements to the press by public employer about an employee's employment investigation and discipline fails to allege a violation of constitutional right to privacy); <u>Mraz v. County of Lehigh</u>, 862 F.Supp. 1344, 1350 (E.D.Pa. 1994) ("Publication by the state of an official act does not constitute a violation of the right to privacy."). Accordingly, this claim is also dismissed.

### C. The Plaintiff's Remaining State Law Claims are Dismissed for Lack of Subject Matter Jurisdiction

In addition to the federal constitutional claims addressed above, the Plaintiff also brings state law claims for tortious interference with Moran's tenure status and expectation of employment, breach of implied covenant of good faith and fair dealing, and negligence. Because the Court has granted summary judgment in favor of the Defendants on all of the Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Broderick v. Associated Hosp. Serv., 536 F.2d 1, 8 n. 25 (3d Cir.1976); Caputo v. Fauver, 800 F.Supp. 168, 172 (D.N.J.1992), aff'd, 995 F.2d 216 (3d Cir.1993). Accordingly, these remaining claims are dismissed for lack of subject matter jurisdiction.

### IV.  CONCLUSION

For the reasons stated above, and for good cause shown, the Defendant's Motion for Summary Judgment is hereby **GRANTED**. An appropriate form of order will be filed herewith.

Date:   February 10, 2006

                                                 s/Stanley R. Chesler
                                                 Stanley R. Chesler, U.S.D.J.