NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES MORAN | |
| Plaintiff, | CIVIL NO. 05-1062 (SRC) |
| v. | **OPINION** |
| SOUTHERN REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION, et al. | |
| Defendants. | |

**CHESLER, District Judge**

   **THIS MATTER** comes before the Court on a Motion for Award of Attorney's Fees

brought by Defendant Joan Josephson ("Josephson") (docket #52).   The Court, having

considered the papers submitted by the parties, for the reasons set forth below, and for good

cause shown, **GRANTS** Defendants' Motion.

## I.  BACKGROUND

   On or about February 24, 2005, the Plaintiff, James Moran ("Moran") filed a three-count

Complaint asserting causes of action for alleged violations of the Fourth and Fourteenth

Amendments, violations of 42 U.S.C. § 1983, and violations of New Jersey state tenure laws

(Count One), tortious interference with Moran's tenure status and employment (Count Two), and

1

negligence claims against Defendants Michael Barker ("Barker") and Josephson (Count Three). (See Compl.)   Moran was a tenured employee, who was employed for about 17 years by Defendant Southern Regional High School District Board of Education (the "District").   The last position Moran held with the District was Assistant Superintendent/Business Administrator.

Defendant Dr. James Kerfoot ("Kerfoot") was the Superintendent of Schools for the District.   In the fall of 2002, several female employees complained to Kerfoot regarding Moran's conduct.   The alleged conduct involved Moran's discussion of sexually explicit matters with his female employees, and often keeping certain female employees with him in his office, behind closed doors, for extended periods of time to engage in unwanted sexual discourses.   These female employees considered Moran's conduct to be sexual harassment.

Barker was an attorney who served as the Affirmative Action Officer for the District.   At Kerfoot's request, Barker conducted a preliminary investigation into the complaints against Moran.   In September 2002, Barker submitted a preliminary report to Kerfoot regarding the Moran investigation.   Kerfoot placed Moran on leave of absence, officially characterized as medical leave, that same month.   These days were charged to Moran's accumulated sick days.

Moran was permitted to return to work in November 2002, under certain conditions. These included his attendance at anger management training, agreeing to keep his office door open, limiting his discussions with staff members to official business and attending monthly school business administrators' meetings.   In May of 2003, Kerfoot was notified by several District employees that Moran's workplace conduct had not improved.   On May 27, 2003, Kerfoot placed Moran on administrative leave.   An attorney, Defendant Josephson, was retained by Kerfoot to investigate the allegations of inappropriate conduct against Moran.   After

2

interviewing various employees at the District's business office, most of whom reported to Moran, Josephson prepared a twenty-two page statement of charges identifying the specific conduct alleged against Moran. These charges included detailed allegations of Moran initiating inappropriate communications of a sexual nature with subordinates, inappropriate comments to and about employees, misusing District property and personnel, insubordination by refusing to comply with administrative directives, and other charges. A copy of this statement of charges was shared with Moran and his attorney.

Before formal charges against Moran were brought before the Board, Moran entered into a settlement agreement (the "Agreement") with the District. Under the terms of the Agreement, Moran agreed to voluntarily resign his position with the District effective November 30, 2003. Moran also agreed to release the District and any of its agents and employees from all claims he may have arising from his employment with the District, or in connection with the severance of that employment, and not to make any public comment on the terms of the Agreement or his employment with the District.

For its part, the District agreed to pay Moran $200,000 in satisfaction of all claims he may have against the District for salary and all other compensation. The District also agreed to release Moran from any claims or causes of action arising in connection with his employment with the District as well as indemnify him against all claims arising from that employment. Additionally, the District agreed that the response to all inquiries related to Moran's employment with the District would be limited to a statement that he was employed from 1986 to 2003 and that he resigned voluntarily from his position. The Agreement also required the District to not disclose any information or make any comment on Moran's work performance unless expressly

released in writing.  In the event that the terms of the Agreement were breached, any claims,

rights, and causes of action covered by the releases in the agreement would be revived.

Pursuant to the Agreement, Moran submitted an irrevocable letter of resignation to the

District, effective November 30, 2003.  On December 1, 2003, the District voted to accept

Moran's resignation and ratified the agreement.  On December 3, 2003, the *Asbury Park Press*

published a story about Moran's resignation and the terms of the Agreement.  (See Josephson

Sum. Judgment Br., Schwerin Aff., Ex. A). The article cited to "sources connected to the district"

and mentioned that a copy of the Agreement was released to reporters after a request was made

under the New Jersey Open Public Records Act.  (Id.)  On December 4, 2003, Moran, through his

attorney, sent a letter to the District claiming that the *Asbury Park Press* article constituted a

breach of the Agreement.  (Id., Ex. C.)  In this letter, Moran notified the District that he

considered the terms of the Agreement void and he withdrew his resignation.[1]  (Id., Ex. C.)

On December 22, 2003, the District filed a complaint  against Moran seeking specific

performance of the Agreement in the Superior Court of New Jersey, Ocean County, Chancery

Division.  A Consent Judgment was entered into on February 9, 2004, where the parties

acknowledged the validity of the Agreement, but provided that any claims as to alleged past

breaches of the Agreement remained viable.  The District dropped its charges seeking specific

performance of the Agreement and Moran's counterclaims were transferred to the Law Division

where they are currently being litigated.  These counterclaims were brought against Kerfoot and

---

[1] A subsequent editorial was published on December 5, 2003 which detailed the terms of the Agreement and criticized the District for entering into such a settlement.  An additional article was published in the *Asbury Park Press* on December 11, 2003 further detailing the circumstances surrounding Moran's resignation.

members of the District, claiming breach of contract, violation of Moran's privacy rights, disparate treatment, violations of Moran's state and federal constitutional rights, wrongful termination, and various other state law contract and tort claims.  On February 24, 2005 Moran brought suit in federal court, reciting many of the same claims currently being litigated in the state case, with additional claims against Defendants Barker and Josephson (who were not parties in the state case).

The claims giving rise to federal jurisdiction in Moran's federal lawsuit were federal constitutional claims based on Title 42 U.S.C. § 1983.  Section 1983 provides civil remedies against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Section 1983 does not, by itself, confer any substantive rights, but rather serves as a vehicle to enforce rights granted under the Constitution or federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  Accordingly, to state a claim under § 1983, a plaintiff must "prove a violation of the underlying constitutional right."  Daniels v. Williams, 474 U.S. 327, 330 (1986).  Moran's § 1983 claims were based on allegations that the Defendants' actions deprived him of his tenure rights "by violations of his substantive and procedural due process rights" (Compl. at 6, ¶ 27), and that the Defendants' alleged violation of the Agreement's confidentiality clause "constituted a clear and direct violation of the [P]laintiff's civil rights as protected under the U.S. Constitution and 42 U.S.C. § 1983" (Compl. at 6, ¶ 26), resulting in a "destruction of [the Plaintiff's] good name and reputation and the liberty interest he held therein."  (Id., ¶ 27.)

On February 17, 2006, this Court dismissed all the federal claims against all the Defendants in this case with prejudice, and dismissed the remaining state law claims without

prejudice for lack of subject matter jurisdiction.[2]  See Moran v. Southern Regional High School

Dist. Bd. of Education, 2006 WL 436201 (D.N.J. Feb. 17, 2006).  On March 15, 2006, Defendant

Josephson filed a Motion for Attorney's Fees claiming that, as a prevailing party, she was

entitled to an award of attorney's fees under 42 U.S.C. § 1988, on the grounds that Moran's

federal suit against her was "frivolous, unreasonable[,] and without foundation."  (Def. Br. at 13.)


### III.  DISCUSSION

It is uncontested that, pursuant to the judgment in this action entered on February 17,

2006, Josephson is a prevailing party in this action within the meaning of 42 U.S.C.A. § 1988.

Section 1988 provides in relevant part that "[i]n any action or proceedings to enforce a provision

of section . . . 1983, 1985 . . . of this title, . . . the court, in its discretion, may allow the prevailing

party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C.A. § 1988.  The standard

used to determine whether a request for attorney's fees by a prevailing defendant should be

approved is stated in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978), which

allows this Court, "in its discretion[, to] award attorney's fees to a prevailing defendant in a Title

VII case upon a finding that the plaintiff's action was frivolous, unreasonable, and without

foundation, even though not brought in subjective bad faith."  This standard enunciated in

Christiansburg has been adopted by the Court of Appeals for the Third Circuit for awards of

attorney's fees to prevailing defendants under § 1988 as well.  Under Third Circuit law, "a

district court may, in its discretion award attorney's fees to a prevailing defendant upon finding

---

[2] The Plaintiff in this case filed a notice of appeal from this Court's dismissal of the
federal claims in this case on March 16, 2006.  (Docket No. 55.)

that the plaintiff's action 'was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.'"  Hughes v. Repko, 578 F.2d 483, 489 (3d Cir.1978) (citing Christiansburg, 434 U.S. at 422, 98 S.Ct. at 701).  Under this standard, a prevailing defendant is entitled to attorney's fees upon a finding that the plaintiff's action was meritless, frivolous, unreasonable, or without foundation, even if it is not brought in subjective bad faith.  Quiroga v. Hasbro, Inc., 934 F.2d 497, 503 (3d Cir. 1991), cert. denied, 502 U.S. 940 (1991).

**A.**     **Josephson is Entitled to Attorney's Fees Under 42 U.S.C. § 1988 Because Moran's § 1983 Claims Were Brought Without Adequate Legal Foundation**

The Court of Appeals for the Third Circuit has identified three factors for courts to consider in determining whether a plaintiff's claim was frivolous or without foundation: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the claims prior to trial or had a full-blown trial on the merits."  See EEOC v. L.B. Foster Co., 123 F.3d 746, 750 (3d Cir.1997) (quoting Sullivan v. School Bd., 773 F.2d 1182, 1189 (11th Cir.1985)).  This list of factors to be considered, however, is not exhaustive, but are mere "guideposts," and that "[d]eterminations regarding frivolity are to be made on a case-by-case basis."  Id. (quoting Sullivan, 773 F.2d at 1189).  In the present case, there was no trial, and Moran asserts that there were no settlement discussions or offers to settle his federal constitutional claims.  (Pl. Br. at 16.)  This leaves the question of whether or not Moran's Complaint presented a prima-facie case to support his claims.

Claims that are not supported by any evidence *may* indicate the claims are frivolous. See

SCHWARTZ & KIRKLAND, 2 Section 1983 Litigation: Statutory Attorney's Fees, § 10.2, n. 18 (1997) (citations omitted).  Awarding of attorney's fees, however, is not always appropriate even if the plaintiff had a mere "shadow of evidence" to support his claims.  See Tuthill v. Consolidated Rail Corp., 1998 WL 321245 at *3 (E. D.Pa.1998).  To determine whether fees are appropriate after a summary judgment motion, courts generally consider whether, after careful consideration of the plaintiff's claims, there was at least *some* basis in law for the plaintiff to bring the suit.  See id. (citations omitted).  Consistent with this standard, this Court will evaluate each of the federal claims in Moran's Complaint in turn.

1.     *Substantive Due Process Claims*

Moran's substantive due process claims were based on his claim that the Defendants violated his fundamental property right in continued tenured public employment, a right to which he is entitled to substantive due process protection.  A long string of judicial precedent in this Circuit, however, makes it clear that whatever interests Moran may have in his continued tenured employment with the District, this is not a fundamental right which is entitled to substantive due process protections.  See Nicholas v. Pennsylvania State University, 227 F.3d 133, 141 (3d Cir. 2000) (holding tenured public employment is not a "fundamental property interest entitled to substantive due process protection").  See also Emri v. Evesham Township Bd. of Educ., 327 F.Supp.2d 463, 471 (D.N.J.2004) (finding interest in tenured public employment not entitled to substantive due process protection);  Homar v. Gilbert, 63 F.Supp.2d 559, 573 (M.D.Pa.1999) ("[P]ublic employment is not a 'fundamental' property interest that implicates substantive due process where an individual, non-legislative employment decision is at issue.");  Lei v. Brown,

8

1997 WL 634506, at *8 (E.D.Pa.Oct.8, 1997) (finding that termination of tenured public employee does not implicate substantive due process);  Austin v. Neal, 933 F.Supp. 444, 453 (E.D.Pa.1996) (finding "[a] right to be discharged from public employment only for cause" not to implicate substantive due process).

While Moran argues that he "respectfully disagrees with Nicholas," and offers contrary precedent from the First Circuit to support his view, (Pl. Br. at 20) the law in this Circuit remains clearly established that no such right exists.  Even if, however, Moran could establish that he had a substantive due process right to continued employment with the District, he still has not presented a colorable claim that such a right was violated by the District's actions.  The threshold for a substantive due process violation is quite high. "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392, 399 (3d Cir. 2003) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (emphasis in original).  See also Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir.1994) (en banc) ("[T]he substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.'").   The District's actions which form the basis of Moran's substantive due process claim is that they initiated an investigation of an employee who was repeatedly accused of sexual harassment by his subordinates.  This does not present a colorable claim of actions that meet the rather high standard to constitute a substantive due process violation - even if such a substantive due process right existed.  Furthermore, as equally applicable to Moran's procedural due process claims and

9

detailed <u>infra</u>, any arguable substantive due process rights Moran may have had to his continued employment with the District were waived by his *voluntary* resignation of his position pursuant to the terms of the Agreement with the District.

2.    *Procedural Due Process Claims*

Moran's procedural due process claims in this case were similarly brought without a viable legal foundation.  Even though, as noted <u>supra</u>, Moran was not entitled to substantive due process protections for his continued employment with the District, someone in his position could ordinarily claim procedural due process protections for his continued employment as a tenured public employee.   <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985); <u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913 F.2d 1064, 1077 (3d Cir. 1990).  Recognizing this, New Jersey law provides specific procedures that are adhered to in order to protect the procedural due process rights of tenured public school employees facing dismissal.  <u>See</u> N.J.S.A. 18A:6-11.  Moran argued that "he was tenured and could not be removed, dismissed or reduced in compensation, except pursuant to the provisions of law found in N.J.S.A. 18A: 6-10 and 18A:6-11," (Compl. at 3, ¶ 10) and it is uncontested that the District did not follow the full procedural process outlined in these statutes to dismiss Moran as a tenured public employee.

Moran focuses his argument on claims that the procedures followed by the Defendants prior to his entering into the Agreement were not consistent with the procedures set forth under New Jersey statutes for dismissing a tenured employee.  Moran notes that members of the school board were informed about the potential charges against him in "closed session" on "various occasions," before Moran was informed of the investigation and potential charges against him,

"thus subverting [the Board's] statutory duties."  (Pl. Br. at 6 - 8.)  This Court, however, need not

reach the question of whether the actions of the Defendants complied with the relevant state

statutory provisions in this case.  The issue at hand is not whether the Defendant adhered to the

relevant state statutes, but rather whether or not their alleged conduct constituted a violation of

Moran's procedural due process rights under the United States Constitution.  To claim a violation

of constitutional procedural due process, Moran must demonstrate that he was deprived of a

property interest that was not "preceded by notice and opportunity for hearing appropriate to the

nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

The reason why Moran cannot put forward a colorable claim that he was deprived of a

protected property interest in his job without notice and an appropriate opportunity to be heard is

apparent from the facts of the case.  Moran was never fired.  He *voluntarily resigned* his position

pursuant to the terms of the settlement Agreement *before* any formal charges were brought to the

School Board.  As this Court noted in its earlier opinion:

> There is no indication that, had Moran not agreed to resign his position as part of the
> Agreement with the District, but rather chose to avail himself of the procedural due
> process protections available to him, that the District would not have followed the
> appropriate procedures in filing charges against him, held the requisite hearings, and
> otherwise appropriately protected Moran's procedural due process rights. The
> Plaintiff's right to claim procedural due process protections for the termination of his
> employment ended when he voluntarily entered into an Agreement with the District
> to voluntarily resign his tenured position.
>
> Should the Agreement be found void by the pending procedures in state court, the
> District may be required to offer Moran notice and an opportunity to be heard on the
> charges by following the procedural process outlined for terminating tenured public
> school employees under New Jersey state law. There is no indication, however, that
> the District would not be prepared to adhere to these procedures in the event that the
> Agreement were to be deemed invalid. Nor is it alleged that these procedures, if
> followed, would offer insufficient protection for Mr. Moran's due process rights.

Moran, 2006 WL 436201, at *5.

Moran, with the assistance of legal counsel, entered into a voluntary settlement agreement with the District.  This Agreement allowed him to avoid formal tenure charges and proceedings by voluntarily resigning his position in exchange for a monetary settlement.  Rather than being denied the opportunity to avail himself of the procedural protections afforded under state law to tenured employees, which would have offered him a formal hearing and the opportunity to be heard, Moran knowingly chose to bypass this process in favor of a negotiated settlement.[3]  As this Court noted in its earlier opinion, Moran voluntarily gave up the right to claim procedural due process protections for the retention of his position when he voluntarily submitted his resignation pursuant to the terms of the Agreement.  Id.  Had he wished to invoke the adequate procedural protections offered under N.J.S.A. 18:A 6-11, and to make his position heard before the Board at formal hearings, he could have simply declined to enter into an Agreement to voluntarily resign his position.  This Court finds, therefore, that Moran's claims that he was denied procedural due process by the Defendants' actions were brought without a legal or factual foundation to support them.

3.   *Constitutional Privacy Claims*

Moran also claimed that the Defendants "violated his right to privacy and expectation thereof" and that the alleged violation of the Agreement's confidentiality clause "constituted a clear and direct violation of the [P]laintiff's civil rights as protected under the U.S. Constitution

---

[3] The validity of the Agreement whereby Moran agreed to voluntarily resign his position with the District in exchange for a monetary settlement of any potential claims was reinforced by a February 9, 2004 consent judgment obtained in New Jersey state court, where the Court deemed the Agreement to be valid and in full force and effect.  (Gerst Cert., Ex. A, at 4.)

12

and 42 U.S.C. § 1983." (Compl. at 6, ¶ 26.)  This disclosure, Moran claims, destroyed his "good name and reputation and the liberty interest he had therein."  (Id. at ¶ 27.)  While there is a recognizable right to privacy guaranteed by the Fourteenth Amendment which protects some confidential information, this right does not extend to protect reputation alone.  Scheetz v. The Morning Call, Inc., 946 F.2d 202, 206 (3d Cir. 1991) (noting that "[t]he Supreme Court rejected the proposition that reputation alone was a liberty or property interest within the meaning of the due process clause.").  See also Paul v. Davis, 424 U.S. 693, 701 (1976) ("The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law.").

Moran contends that, under N.J.S.A. 18A:6-11, he has a statutory right to confidentiality of tenure proceedings, and that he has a "[c]onstitutional right to due process as prescribed by New Jersey statutes."  (Pl. Br. at 24.)  The relevant statutory provision cited by Moran is one that mandates that "[t]he consideration and actions of the board as to any charge [against a tenured employee] shall not take place at a public meeting."  N.J.S.A. 18A:6-11.  Even assuming arguendo, that this provision offered Moran a colorable statutory claim of confidentiality to protect against the Defendants revealing information about his resignation and the terms of the Agreement, a federal constitutional right cannot be 'created' by a state statutory provision. Regardless of any state statutory provisions, there is no federal constitutional right to privacy in protecting one's reputation.  Paul, 424 U.S. at 713.  As the Supreme Court noted in Paul v. Davis,  "[n]one of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner."  Id. at 713.

Even if Moran were able to demonstrate, as he was alleging, that the Defendants were responsible for leaking information about the terms of his settlement agreement to the media, this would, at best, constitute a contractual breach of the Agreement's terms and a possible violation of New Jersey state statutory provisions.  Such a disclosure by the Defendants, however, would not constitute a violation of Moran's constitutional privacy rights.  See Paul, 424 U.S. at 713 (finding publication of records of official acts not to infringe on constitutional privacy rights). See also Peters v. Houston, 1999 WL 554581, *12 (E.D.Pa.1999) (release of statements to the press by public employer about an employee's employment investigation and discipline fails to allege a violation of constitutional right to privacy); Mraz v. County of Lehigh, 862 F.Supp. 1344, 1350 (E.D.Pa.1994) ("Publication by the state of an official act does not constitute a violation of the right to privacy.").  Accordingly, Moran's claims for constitutional privacy violations were brought without the benefit of a viable legal foundation to support them.

The Plaintiff filed this action in an apparent attempt to bring claims already being pursued in state court in federal court, and to permit him to bring claims against Defendants Josephson and Barker.  The § 1983 claims outlined above provided the pretext for the Plaintiff to invoke this Court's jurisdiction over a lawsuit that is largely duplicative of the suit he was already pursuing in state court.  For the reasons stated above, this Court finds that the Plaintiff's Complaint failed to make even a prima facie to show that these § 1983 claims were not without merit or legal basis.  Accordingly, as the prevailing party, Defendant Josephson is entitled to an award of attorney's fees incurred in defending against this action.

**B.      Calculating the Fee Award**

Having determined that Josephson is entitled to an award of attorney's fees in defending against the present action, the Court must next evaluate what is an appropriate fee to be awarded. As the party requesting attorney fees, Josephson has the burden of demonstrating that her request is reasonable. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). To satisfy this burden, a fee petitioner must "submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party challenging the fee petition must make specific objections that are sufficient to give fee applicants notice of the objections to the requested fee. Rode, 892 F.2d at 1183. "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id.

Attorney fee awards are calculated by multiplying the number of hours reasonably expended on the litigation times a 'reasonable' hourly rate. Hughes v. Repko, 578 F.2d 483, 485 (3d Cir.1978). The "reasonable value of an attorney's time is the price that time normally commands in the marketplace, which is generally reflected in the attorney's billing rate." Student Pub. Interest Research Group of New Jersey, Inc. v. AT&T Bell Laboratories, 842 F.2d 1436, 1445 (3d Cir. 1988). The reasonable hourly rate multiplied by the reasonable hours is known as the 'lodestar.' Generally, the lodestar is presumed to be the reasonable fee. However, the court "has the discretion to make certain adjustments to the lodestar." Rode, 892 F.2d at 1183. Specifically, the lodestar may be adjusted downward if awarding the lodestar amount would be unreasonable. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

In support of the current motion to award attorney's fees, Josephson submitted an affidavit by her attorney, James Schwerin, which provided a detailed invoicing of the hours he

15

worked, hourly rates charged, and expenses he incurred in preparing Josephson's defense against the Plaintiff's Complaint.  (See Pl. Br., Schwerin Aff., Ex. B.)  The total fees and expenses incurred in preparing Josephson's defense against the Plaintiff's action was $9,496.31.  (Id.)  This is further supported by an affadavit of Carl Poplar, a duly licensed attorney in the State of New Jersey, who is admitted to the District of New Jersey, attesting to his belief that, upon examination of current matter, the requested fee of $250 per hour requested in Josephson's motion is reasonable given the customary rate of attorneys practicing in the District of New Jersey, and given Mr. Schwerin's experience.  (See Pl. Br., Poplar Aff.)

The Plaintiff opposes Josephson's right to claim attorney's fees in this case, but has not contested the reasonableness of the fees submitted.  The Court, after careful review of the affidavits and invoices submitted by Josephson in support of her claim for attorney's fees finds the hourly rate requested and the hours reported on Josephson's defense to be reasonable. Accordingly, the Court awards Defendant Josephson $9,496.31 in attorney's fees and costs.

## IV.  CONCLUSION

For the reasons stated above, and for good cause shown, this Court finds that the § 1983 claims in the Plaintiff's Complaint brought against Defendant Josephson were brought without merit or legal basis.  As the prevailing party, Defendant Josephson is therefore entitled to an award of attorney's fees incurred in defending against this action.  Furthermore, the Court finds the sum of $9,496.51 a reasonable award of attorney's fees and costs.  Accordingly, the Defendant's Motion for Attorney's Fees is hereby **GRANTED**.  An appropriate form of order will be filed herewith.

Date:   April 10, 2006


         s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.